UNITED STATES of America,
Plaintiff–Appellant,

v.

Rigoberto ALVARADO–GUIZAR, true name Rigoberto Guizar–Alvarado, Defendant–Appellee.

No. 02–30220.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 2004.

Filed March 22, 2004.

Jane Kirk, Assistant United States Attorney, Yakima, WA, for the plaintiff-appellant.

Edwin F. Alden, Kennewick, WA, for the defendant-appellee.

Before: HUG, GRABER, and CLIFTON, Circuit Judges.

GRABER, Circuit Judge:

In this appeal by the government, we are called on to decide whether a district court may decide *not* to impose a two-level sentencing enhancement for obstruction of justice, under United States Sentencing Guideline ("U.S.S.G.") § 3C1.1, without making specific findings to support that decision. Our sister circuits are divided on this question, which is one of first impression for the Ninth Circuit. We join the Second and Eighth Circuits to hold that the district court need not make findings when it declines to apply a § 3C1.1 enhancement and, accordingly, affirm the sentence imposed here.

## FACTUAL AND PROCEDURAL HISTORY

In 1998, Drug Enforcement Agency ("DEA") agents arrested Defendant Rigoberto Alvarado–Guizar, along with three co-conspirators, after a controlled drug transaction with a government informant in Kennewick, Washington. A federal grand jury indicted Defendant on charges of conspiracy and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. Defendant's first trial ended in a mistrial after the jury failed to reach a verdict.

At Defendant's second trial, the government relied on the testimony of convicted co-conspirator Alvaro Cordova–Ayala, and particularly on Cordova–Ayala's account of out-of-court statements made by convicted co-conspirator Cristobal Fernandez. Defendant had rented the car that transported five pounds of methamphetamine from

Modesto, California, to Hermiston, Oregon, and a DEA agent testified that he saw Defendant in the rented car shortly before the methamphetamine was transferred to a vehicle driven by Cordova–Ayala. However, the only statements that showed unequivocally that Defendant knew of the presence of methamphetamine in the rented car, and that Defendant was a participant in the conspiracy, were statements made by Fernandez to Cordova–Ayala. In arranging the transportation of the methamphetamine from California to Oregon, Cordova–Ayala spoke only with Fernandez. Further, Cordova–Ayala was the only co-conspirator to talk to the government informant who posed as the purchaser of the methamphetamine.

Defendant testified in his own defense. He told the jury that he had no knowledge of the conspiracy to distribute methamphetamine or of the presence of methamphetamine in the rented car. Defendant testified that he had traveled to Washington to attend a relative's first communion. Two witnesses corroborated Defendant's testimony.

The second jury returned a guilty verdict. At the sentencing hearing, the district court adopted the findings of the Presentence Report ("PSR"). In his interview with the preparer of the PSR, Defendant had continued to deny that he knew about the drug-trafficking conspiracy and to deny that he participated in it. Accordingly, the PSR concluded that Defendant did not qualify for a reduction of the offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. However, the PSR also concluded that there was "no information to suggest the defendant impeded or obstructed justice" and, therefore, did not recommend an enhancement pursuant to U.S.S.G. § 3C1.1. The government objected to the latter recommendation.

Without announcing its reasons, the district court declined to impose a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. However, because Defendant maintained his claim of innocence at the sentencing hearing, the district court refused to reduce Defendant's sentence for acceptance of responsibility or to grant a reduction of sentence under 18 U.S.C. § 3553(f)'s "safety valve" provision for offenders who have no more than one criminal history point.[1] Defendant received a sentence of 188 months' imprisonment. Defendant timely appealed his convictions on several grounds. The government cross-appealed, arguing that the district court abused its discretion by failing to impose a two-level enhancement for obstruction of justice. In this opinion we address only the government's cross-appeal.[2]

## STANDARD OF REVIEW

█ The district court's application of the Sentencing Guidelines to the facts of a

1. In certain circumstances, 18 U.S.C. § 3553, the statute that governs the imposition of sentences under the Guidelines, permits a district court to reduce the sentence of a first-time offender if the district court finds that,

   not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

   18 U.S.C. § 3553(f)(5).

2. Defendant's appeal involves settled issues of law. We therefore address his appeal in a separate memorandum disposition, filed today, in which we affirm his convictions.

particular case is reviewed for abuse of discretion. *United States v. Technic Servs., Inc.,* 314 F.3d 1031, 1038 (9th Cir. 2002). We also review for abuse of discretion a district court's evaluation of the reliability of evidence used for sentencing purposes. *United States v. Shetty,* 130 F.3d 1324, 1331 (9th Cir.1997).

## DISCUSSION

U.S.S.G. § 3C1.1 requires a district court to impose a two-level sentencing enhancement if

> . (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

U.S.S.G. § 3C1.1 (Nov.2001). The commentary to § 3C1.1 clarifies that, although the enhancement "is not intended to punish a defendant for the exercise of a constitutional right," that is, the right to testify on one's own behalf in a criminal proceeding, "a denial of guilt under oath that constitutes perjury" is a basis for application of the sentence enhancement. U.S.S.G. § 3C1.1, cmt. n. 2.

In *United States v. Dunnigan,* 507 U.S. 87, 98, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the . Supreme Court held that, "[u]pon a proper determination that the accused has committed perjury at trial," the accused's trial testimony can supply the basis for application of the § 3C1.1 enhancement. To decide when an accused's testimony constitutes perjury,

*Dunnigan* adopted the federal criminal definition of perjury set out in 18 U.S.C. § 1621. *Dunnigan,* 507 U.S. at 94, 113 S.Ct. 1111. Under that definition,"[a] witness testifying under oath or affirmation [commits perjury] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* (citing 18 U.S.C. § 1621(1)).

The Court rejected Dunnigan's argument that application of the enhancement for obstruction of justice on the basis of an accused's trial testimony always impermissibly burdens the right, under 18 U.S.C. § 3481, to testify on one's own behalf in a criminal proceeding.[3] *Id.* at 98, 113 S.Ct. 1111. . To secure that right, the Court held, if an accused challenges a § 3C1.1 sentencing enhancement based on the accused's testimony at trial, the district court must make factual findings that satisfy all three elements of perjury—falsity, materiality, and willfulness—contained in 18 U.S.C. § 1621. *Id.* at 96–97, 113 S.Ct. 1111. Although stating that it is "preferable" for a district court to address each element of perjury in a "separate and clear finding," the Court held that it is sufficient if a court's finding of an obstruction of justice "encompasses all of the factual predicates for a finding of perjury." *Id.* at 95, 113 S.Ct. 1111.

Following *Dunnigan,* we held that, when a district court has found all the factual predicates that support a finding of perjury, the enhancement for obstruction of justice is mandatory. *United States v. Ancheta,* 38 F.3d 1114, 1117–18 (9th Cir. 1994). Here, based on *Dunnigan* and *Ancheta* the government makes two main arguments, which we will address in turn.

---

**3.** The Supreme Court has held that the Constitution also guarantees a defendant's right to testify on his or her own behalf. *Rock v.* *Arkansas,* 483 U.S. 44, 51–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

First, the government argues that the district court actually *did* find all the factual predicates identified in *Dunnigan* as necessary to support a finding of perjury, so that the court's decision not to impose the § 3C1.1 sentencing enhancement for obstruction of justice was an abuse of discretion under *Ancheta.* In the alternative, if the district court did *not* make findings as to each element of perjury, the government argues that the court was required to do so before declining to enhance Defendant's sentence.

A. *The district court did not find the elements of perjury.*

■ Although conceding that the district court did not expressly find that Defendant willfully lied about a material matter at his second trial, the government argues that, taken together, the district court's factual findings encompass all of the factual predicates for a finding of perjury. *See United States v. Monzon–Valenzuela,* 186 F.3d 1181, 1184 (9th Cir. 1999) (allowing perfunctory findings with respect to the elements of perjury "as long as they are clearly supported by the record"); *United States v. Arias–Villanueva,* 998 F.2d 1491, 1512 (9th Cir.1993) (holding that, when making the findings necessary to support a sentencing enhancement for obstruction of justice, generalized findings may be sufficient under § 3C1.1 so long as they encompass all the factual predicates for a finding of perjury). Looking at the three items identified by the government, we cannot agree.

First, the government cites the district court's remark that Defendant's claim that his presence during the drug transaction was "mere happenstance" is

> just not born[e] out by the testimony and more importantly, when you took the stand and you and your family members testified as you did, and *the jury*

*had a chance to hear you and see you and hear and see relatives and your family and to weigh the credibility,* weigh your credibility against the credibility of Cordova Ayala and what the police observed, *they* chose beyond a reasonable doubt to believe that the Government had proved its case.

(Emphasis added.) That statement is nothing more than an acknowledgment that the *jury* did not believe Defendant's testimony and, therefore, convicted him. As we will explain shortly, however, the district court was not required to agree with the jury, and in the above-quoted passage the court did not do so.

■ Second, the government points to the district court's determination that Defendant was ineligible for a reduction of sentence pursuant to the safety valve provision of 18 U.S.C. § 3553(f). The government argues that, if the district court had believed Defendant's testimony, it would have applied the safety valve. Therefore, the government reasons, the district court's decision not to apply the safety valve is tantamount to a finding that Defendant had testified falsely.

It would be inappropriate for us to draw such a conclusion. Section 3553(f)(5) requires not only that the defendant testify "truthfully," but also that the defendant provide "*all* information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5) (emphasis added); *see also United States v. Shrestha,* 86 F.3d 935, 939 (9th Cir.1996) ("[S]ection (5) of the safety valve provision has been termed a 'tell all you can tell' requirement. In other words, the defendant must provide, prior to sentencing, *all* information at his disposal which is relevant to the offense ...." (emphasis added) (citation omitted)); *United States v. Real–Hernan-*

*dez*, 90 F.3d 356, 361 (9th Cir.1996) ("The plain language of [the safety valve provision] allows 3502 any provision of information in any context to suffice, so long as the defendant is truthful *and complete*." (emphasis added)); *United States v. Matos*, 328 F.3d 34, 39 (1st Cir.2003) (The safety valve "burden obliges the defendant to prove to the court that the information he supplied in the relevant time frame was both truthful *and complete*. Consequently, a safety valve debriefing is a situation that cries out for straight talk; *equivocations, half-truths, and veiled allusions will not do*." (emphasis added) (citation omitted)).

The district court specifically stated during Defendant's sentencing hearing that the safety valve provision would apply only if the defendant told the "*complete* truth about [his] role in the offense." Although the court questioned during the sentencing hearing the veracity of Defendant's statements that he had "nothing to do" with the drug transaction and that he did not know that the drugs were in the car, the court never explicitly found that Defendant was testifying falsely. Rather, as quoted above, the court stated that the "*jury* didn't believe" Defendant and thus convicted him. At the same time, the district court could have concluded that, although Defendant did not lie in his testimony, his testimony was nonetheless incomplete. *See United States v. Sherpa*, 110 F.3d 656, 662 (9th Cir.1996) ("[W]e have no difficulty in holding that a district court may reconsider facts necessary to the jury verdict in determining whether to apply the safety valve provision of the guidelines.") The two questions are not the same. Even if the court personally believed that Defendant had testified truthfully, the court still could conclude that Defendant had not

provided the court and the government with the *entire* truth. The fact that Defendant might have failed to offer a complete account of the offenses—a ground for declining to apply § 3553(f)(5)—is not mutually exclusive with a conclusion that Defendant did not testify falsely during trial.

Moreover, the district court might have concluded that, even if Defendant had not lied on the stand, Defendant nonetheless failed to meet his burden to qualify for the safety valve provision. "The defendant has the burden of proof with respect to any sentence reduction based upon a mitigating factor." *United States v. Washman*, 128 F.3d 1305, 1307 (9th Cir.1997). The "defendant must show by a preponderance of the evidence, that [h]e qualified for the safety valve provisions." *Id.* (internal quotation marks omitted). Defendant may simply have failed to carry his burden of proof; evidence in equipoise is not enough.[4]

Third, the government invites us to infer the necessary factual predicates from the district court's sentencing decision in a separate proceeding. The district court did apply the safety valve to co-conspirator Fernandez. Because 18 U.S.C. § 3553(f)(5) requires that a defendant testify truthfully, and because Fernandez testified that Defendant was an active participant in the conspiracy, the government argues that the district judge, who presided over both trials, must have concluded that Defendant was lying when he made statements that contradicted Fernandez' testimony at his own trial.

However, the district court expressly refused to consider Fernandez' testimony when sentencing Defendant. Because Defendant had no opportunity to challenge Fernandez' testimony during Fernandez'

---

4. Defendant has not pursued the safety-valve issue on appeal, perhaps in recognition that

he did not have a good claim to qualify for the safety valve.

trial or sentencing hearing, and because of Fernandez' motive to shift blame to Defendant, the district court did not abuse its discretion by declining to consider Fernandez' testimony when sentencing Defendant.

■ The only clear statement the district court made with respect to Defendant's testimony at his second trial is that *the jury* did not believe it and, thus, convicted Defendant. However, a jury's verdict alone is insufficient to support the imposition of an enhancement under U.S.S.G. § 3C1.1. *Monzon–Valenzuela,* 186 F.3d at 1184. " 'It is axiomatic that it is the exclusive function of juries to determine whether defendants are guilty, and of the court to determine matters of punishment.' " *Sherpa,* 110 F.3d at 661–62 (quoting *United States v. Frank,* 956 F.2d 872, 879 (9th Cir.1991)). As we further explained, a judge's disagreement with a jury for sentencing purposes does not itself cast doubt on the jury's verdict or require the judge to enter a judgment of acquittal:

> A judge ... could logically find that reasonable minds might differ on a given point so as to preclude a judgment of acquittal, but conclude that *he or she* would have voted differently had he or she been a juror. While the judge's personal disagreement has no impact on the jury's finding of guilt, ... such disagreement is properly considered in the judge's sentencing decision.

*Id.* at 661. We therefore hold that the record does not contain the findings necessary to support a two-level enhancement for obstruction of justice.

B. *The district court did not have to make findings on the elements of perjury when not applying the § 3C1.1 enhancement.*

■ Having concluded that the district court did not find the elements of perjury,

we next consider whether the district court was required to make factual findings to support its decision *not* to impose a sentencing enhancement under § 3C1.1. Although our earlier discussions of § 3C1.1 provide some guidance, we have yet to address this precise issue.

In *United States v. Higa,* 55 F.3d 448, 453 (9th Cir.1995), the district court had concluded as a matter of law that "Higa's testimony in court 'cannot constitute a basis' for imposing the obstruction of justice adjustment." *Id.* at 453. A few weeks after Higa's sentencing, the Supreme Court decided *Dunnigan,* in which the Court resolved the split among lower courts on that very issue, and in which the Court held that a defendant's trial testimony can constitute a basis for imposing the enhancement under § 3C1.1. Thus, we remanded Higa's case for resentencing, including appropriate findings, because the district court's decision was erroneous as a matter of law under intervening Supreme Court precedent. *Id.* at 454.

In *United States v. Beardslee,* 197 F.3d 378, 389 (9th Cir.1999), we held that the district court properly exercised its discretion "in stating, without elaboration, that it would not make a factual finding that an obstruction-of-justice enhancement, pursuant to U.S.S.G. § 3C1.1, should be applied." (Footnote omitted.) Our holding relied primarily on an extant application note to § 3C1.1, which provided that, "[i]n applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant." U.S.S.G. § 3C1.1, cmt. n. 1 (Nov.1995). However, that text was deleted from the Guidelines in 1997. *See* U.S.S.G. § 3C1.1 (1997 Amendments). Thus, neither *Higa* nor *Beardslee* controls.

The other circuits that have answered the question whether a district court must

make factual findings when deciding not to impose the obstruction-of-justice enhancement are evenly divided. Two have said "yes," and two have said "no."

In *United States v. Tracy,* 989 F.2d 1279, 1289–90 (1st Cir.1993), the First Circuit vacated a defendant's sentence and remanded to the district court after the district court declined to apply the enhancement even though "the district court expressly stated that it 'disbelieved the accuracy of [Tracy's] testimony.'" Noting that *Dunnigan* requires a district court " 'to make findings to support all the elements of a perjury violation,'" the First Circuit imposed a corollary obligation on the district court to "articulate clearly the elements it believes have not been satisfied." *Id.* at 1290 (quoting *Dunnigan,* 507 U.S. at 97, 113 S.Ct. 1111).

The Fifth Circuit reached the same conclusion in *United States v. Humphrey,* 7 F.3d 1186 (5th Cir.1993). Like *Tracy, Humphrey* involved a district court's refusal to impose an enhancement for obstruction of justice, even after the court stated that it in fact shared the jury's disbelief of the defendant's testimony. *Id.* at 1190. Drawing from *Tracy,* the Fifth Circuit held that the proper resolution in this circumstance was to remand the case to the district court for factual findings. *Id.* at 1191 (citing *Tracy,* 989 F.2d at 1289–90).

By contrast, the Second and Eighth Circuits have both held that a district court is not required to make factual findings when deciding not to impose an enhancement for obstruction of justice. In *United States v. Vegas,* 27 F.3d 773 (2d Cir.1994), the Second Circuit rejected the government's contention that *Dunnigan* requires the district court to justify its decision not to impose the enhancement:

> The central holding of *Dunnigan* is that enhancement of a sentence under § 3C1.1 does not unconstitutionally burden a defendant's right to testify. 507 U.S. at [96, 113 S.Ct. 1111]. *Dunnigan* does not say that every time a defendant is found guilty despite his exculpatory testimony, the court must hold a hearing to determine whether or not the defendant committed perjury. On the contrary, that opinion clearly states that when the court *wishes to impose the enhancement* over the defendant's objection, the court "must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." 507 U.S. at [95, 113 S.Ct. 1111]. *Dunnigan* does not suggest that the court make findings to support its decision *against* the enhancement.

*Id.* at 782–83 (emphasis in original).

The Second Circuit distinguished an earlier case, *United States v. Shonubi,* 998 F.2d 84 (2d Cir.1993), in which it had held that, once a district court finds that the defendant willfully lied in his testimony, the sentencing court must apply the enhancement. Looking at the record and finding no statement from the district court regarding whether it believed the defendant's testimony, the court in *Vegas* reasoned that the "judge apparently concluded that the evidence of perjury was not sufficiently clear to determine whether perjury had or had not been committed." *Vegas,* 27 F.3d at 783. *Vegas* held that, in these circumstances, *Dunnigan* required neither additional factual findings nor the imposition of an additional penalty for obstruction of justice. *Id.*

In *United States v. Aguilar–Portillo,* 334 F.3d 744 (8th Cir.2003), the Eighth Circuit also upheld a district court's refusal to impose an enhancement for obstruction of justice notwithstanding the contra-

diction between the defendant's denial of guilt and the jury's verdict. The government contended that the district court was not permitted to find that the defendant did not commit perjury "because, for sentencing purposes, a court must presume that the verdict is correct and that the defendant is guilty." *Id.* at 749. Rejecting that contention, the Eighth Circuit noted that, "[a]lthough the jury adjudicates guilt, the district court is responsible for making findings relevant to the matter of obstruction, and if the government does not convince the court that the defendant willfully intended to provide false testimony, an enhancement for obstruction because of false testimony is not warranted." *Id.*[5]

*Aguilar–Portillo* concluded that, when deciding whether to make a finding with respect to obstruction of justice, a district court is entitled to rely on its own personal observations. *Id.* In explaining its decision not to make factual findings, the district court noted, "among other things, several contradictions in various witnesses' testimony, a probable lie by one of the prosecution's witnesses, the fact that the jury deliberated for a day and a half, the fact that Mr. Aguilar–Portillo did not look evasive, and the fact that he merely made unembellished denials." *Id.* at 748. On that record, the Eighth Circuit "discern[ed] no clear error of fact or error of law" in the district court's sentencing decision. *Id.* at 749.

It may be possible to reconcile these two lines of authority. In both *Tracy* and *Humphrey,* the district courts had stated on the record that they, the judges, agreed with the juries' negative assessments of the defendants' credibility as witnesses. In the face of the district courts' explicit acknowledgment of the defendants' lies under oath, the refusal to apply an obstruction-of-justice enhancement amounted to an inconsistency in the record, which had to be resolved by further findings. In neither *Vegas* nor *Aguilar–Portillo* had the district court similarly aligned itself factually with the jury's verdict. Here, as noted, the district court did not make a finding that *the court,* as distinct from the jury, disbelieved Defendant, so the reasoning of the First and Fifth Circuit cases is not directly applicable.

We acknowledge, nonetheless, that there is a tension between these two lines of authority. The Second and Eighth Circuit cases do not cite or distinguish the First or Fifth Circuit cases. A careful reading of *Dunnigan* persuades us that the Second and Eighth Circuits have the better of the argument. Throughout its opinion in *Dunnigan,* the Court discusses a district court's obligation to make factual findings to *support* an enhancement under § 3C1.1 in the context of a *defendant's* objection to the enhancement: *"[I]f a defendant objects to a sentence enhancement resulting from her trial testimony,* a district must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice...." 507 U.S. at 95, 113 S.Ct. 1111 (emphasis added). In *United States v. Grayson,* 438 U.S. 41, 55, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), the Court had upheld an increased sentence based on a defendant's false testimony, but had clarified that its opinion did not require "a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose tes-

---

5. The Eighth Circuit has noted one exception to this rule. In *United States v. Swick,* 334 F.3d 784, 788 (8th Cir.2003), the court held that the obstruction-of-justice enhancement was required where the defendant "gave two diametrically opposed statements; one of which could not be true." Because in such a circumstance the district court could not reasonably have believed both statements, the enhancement was mandatory. *Id.*

timony is deemed false." *Dunnigan* suggests that the obligation to make factual findings operates as a means to prevent such wooden or reflexive applications of § 3C1.1:

> The concern that courts will enhance sentences as a matter of course whenever the accused takes the stand and is found guilty is dispelled by our earlier explanation that *if an accused challenges a sentence increase based on perjured testimony,* the trial court must make findings to support all the elements of a perjury violation in the specific case.

*Dunnigan,* 507 U.S. at 96–97, 113 S.Ct. 1111 (emphasis added). For example, these required findings ensure that a defendant's sentence is not enhanced for testimony that, although false, is the product of "confusion, mistake, or faulty memory." *Id.* at 95, 113 S.Ct. 1111.

As we have explained, the requirement that a district court make factual findings that encompass all the elements of perjury "is a procedural safeguard designed to prevent punishing a defendant for exercising her constitutional right to testify." *United States v. Jimenez,* 300 F.3d 1166, 1171 (9th Cir.2002). There is no parallel that requires the same result when a defendant is not receiving a longer sentence. Unlike a testifying criminal defendant, the government does not face the risk of automatic punishment for its witnesses' testimony in an unsuccessful trial, nor does it have a constitutional or statutory right similar to the accused's with respect to trial testimony. Simply put, the government does not face the dangers that *Dunnigan's* requirement of factual findings is designed to prevent.

Contrasting the facts of *Dunnigan* with the facts of this case reveals why it would be ill-advised to require the district court to make factual findings in every case in which the government objects to the court's failure to impose an enhancement under § 3C1.1. At Dunnigan's trial for conspiracy to distribute cocaine, the government presented five witnesses who took part in or observed the defendant's cocaine trafficking, which was monitored by law enforcement personnel on at least one occasion. *Dunnigan,* 507 U.S. at 89–90, 113 S.Ct. 1111. Against this evidence, Dunnigan offered nothing more than her own testimony. *Id.* Similarly, *Tracy* resembled *Dunnigan* because both cases involved " 'numerous witnesses' contradicting the defendant on 'so many facts on which she could not have been mistaken.' " *United States v. Tracy,* 36 F.3d 199, 202 (1st Cir.1994) (quoting *Dunnigan,* 507 U.S. at 87, 113 S.Ct. 1111).

By contrast, here, Defendant presented two other witnesses who corroborated his explanation for renting the vehicle and accompanying Fernandez and Cordova–Ayala to Washington. Against their testimony, the government offered the testimony of Cordova–Ayala, the co-conspirator who orchestrated the drug transaction with the government informant.[6] Cordova–Ayala, in turn, testified to out-of-court statements made by Fernandez inculpating Defendant. Because of miscommunication with the interpreter or evasiveness of the witness, or both, Defendant's lawyer encountered much difficulty when cross-examining Cordova–Ayala. On at least one occasion, the district court instructed Defendant's lawyer to abandon a line of questioning after several attempts by Defendant's lawyer and the court failed to

---

**6.** The government also adduced testimony from a DEA agent and a member of local law enforcement. However, their testimony established only Defendant's presence with the co-conspirators.

elicit a response to a single yes-or-no question. After evaluating the testimony and observing the demeanor of all the witnesses, it is entirely possible that, as in *Aguilar–Portillo*, the district court concluded that, notwithstanding the jury's verdict, the government had failed to prove by a preponderance of the evidence that Defendant testified falsely.

Nothing in U.S.S.G. § 3C1.1 or in 18 U.S.C. § 3553 required the district court to make specific factual findings in the present situation. Neither does controlling case law require a district court to support its decision not to impose the enhancement for obstruction of justice with factual findings. *Dunnigan* discusses factual findings only in the context of a defendant's objection to the sentencing enhancement based on his own testimony. Our own interpretations of § 3C1.1 also suggest that the role of factual findings is to safeguard the constitutional and statutory right to testify on one's own behalf in a criminal proceeding. *Jimenez*, 300 F.3d at 1171. When a district court's sentencing decision does not threaten that right, the rationale for requiring factual findings vanishes.

## CONCLUSION

The district court did not make the predicate factual findings that would support a sentencing enhancement under § 3C1.1. Nothing in the Sentencing Guidelines, the statute governing their application, or controlling case law requires a district court to make factual findings when electing not to impose an enhancement for obstruction of justice. The decision of the district court is therefore AFFIRMED.