**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

JOSEPH GALAVIZ LANGER,
          *Defendant-Appellant.*

No. 09-50399

D.C. No.
2:07-cr-00818-
VBF-2

OPINION

Appeal from the United States District Court
for the Central District of California
Valerie Baker Fairbank, District Judge, Presiding

Argued and Submitted
June 7, 2010—Pasadena, California

Filed August 20, 2010

Before: Stephen S. Trott and William A. Fletcher,
Circuit Judges, and Charles R. Breyer, District Judge.*

Opinion by Judge Charles R. Breyer

---

*The Honorable Charles R. Breyer, United States District Judge for the
Northern District of California, sitting by designation.

**COUNSEL**

Christopher Brunwin, Michael J. Raphel, Jean-Claude Andre, OFFICE OF THE U.S. ATTORNEY, Los Angeles, California, for the appellee.

Davina T. Chen, Jonathan D. Libby, FEDERAL PUBLIC DEFENDER'S OFFICE, Los Angeles, California, for the appellant.

## OPINION

BREYER, District Judge:

This appeal concerns whether rap sheets are sufficiently reliable for purposes of the Sentencing Guidelines to prove the duration and date of imposition of a prior sentence. Defendant in this case pleaded guilty on December 18, 2008 to one count of conspiracy to distribute cocaine. At sentencing, the Government relied on Defendant's rap sheet to argue that his prior convictions justified placing him in criminal history category II under the Sentencing Guidelines. Although Defendant did not dispute that he had been previously convicted, he argued that the rap sheets alone could not establish (1) that the sentence was sufficiently long to justify placing him in category II, or (2) that the sentence was not stale for purposes of the sentencing guidelines.

Ninth Circuit cases establish that a sentencing judge can rely on rap sheets in certain limited circumstances. However, this Circuit has not previously decided whether a rap sheet, in the absence of any corroborating evidence, is sufficiently reliable to establish by a preponderance of the evidence the timing of a conviction and the length of the resultant sentence. As an initial matter, it is important to note that, unlike some other cases in which the reliability of a rap sheet is questioned, Defendant here does not argue that he was not, in fact, convicted of the crime listed on the rap sheet. He concedes the fact of conviction. He argues instead that the rap sheet was not "sufficiently reliable to establish the date and length of a prior sentence." Notwithstanding his suspicion as to the reliability of his rap sheet, Defendant presented no evidence at sentencing—or at any other time—undermining in any way the facts reflected in the rap sheet. He argues simply that the Government bore the burden of proving his criminal history, and because it relied solely on per se unreliable evidence, it failed to meet its burden.

We disagree. In the absence of *any* evidence suggesting that the rap sheet contained errors of fact, and in the absence of a dispute as to the existence of the prior conviction, we conclude that the rap sheet was sufficiently reliable to justify applying criminal history category II.

## BACKGROUND

On December 18, 2008, Defendant pled guilty to one count of conspiracy to distribute cocaine. **[2 ER 121]** A Presentence Report ("PSR") was issued on February 23, 2009. That PSR calculated Defendant's criminal history as category II based on three criminal history points. **[PSR ¶¶ 35-39]** Two points were based on convictions obtained in August 1997 for battery, willful cruelty, and threatening to commit a crime with the intent to terrorize. A third point was assigned based upon an April 1997 conviction for assault.

Defendant objected to the PSR, arguing that the judge should not consider the prior convictions reported in the PSR because the certified court records documenting those convictions had been destroyed. Therefore, according to Defendant, there was no proof that the prior sentence was of sufficient length to justify applying two criminal history points. On July 23, 2009, the Probation Office responded in an addendum to the PSR. **[PSR 328]** The Probation Office concluded that, as to the August 1997 convictions, the "conviction[ ] and imposed sentence . . . was fingerprint-verified as belonging to the defendant, according to his CLETS rapsheet, and is thus deemed reliable." As to the April 1997 conviction, the Probation Office concluded that the "conviction and imposed sentence . . . was identified as belonging to the defendant, according to his CLETS rapsheet, but a fingerprint match was not made. However, this conviction clearly belongs to the defendant because the arrest information detailed in the CLETS rapsheet was confirmed and expanded upon by the arrest report . . . ." The probation officer also noted that, even

if the April 1997 conviction were not considered, Defendant's history would still place him in category II.

Defendant's sentencing hearing was held on July 27, 2009. **[1 ER 1-63]** The judge referenced the dispute regarding the proper criminal history category, and the defense attorney explained that

> whether or not the date that the sentence was imposed — it states August 28, '97 — if there's a typo there and we don't know that, that makes a difference based on the age, for example, because this conviction is so old, but it's on the verge, literally, of becoming too old to consider.

Defense counsel went on to argue that the duration of the sentence was similarly important, because a shorter sentence might not have justified consideration of the sentence under the Guidelines.

On July 30, 2009, the district court concluded that Defendant's August 1997 convictions had been adequately proved by the rap sheet. As the judge explained: "The Court finds that the arrest, conviction, and sentence are adequately shown by the government referring to the fingerprint verified rap sheet." The court found a "closer question" as to the April 1997 conviction, and sustained Defendant's objection to including that conviction in his criminal history. The April 1997 conviction was therefore not included in Defendant's criminal history.

Defendant was ultimately sentenced to 87 months in prison, and to a five-year term of supervised release.

## STANDARD OF REVIEW

This Court reviews for abuse of discretion whether a "rap sheet was sufficiently reliable to be used in calculating [a

defendant's] criminal-history score." *United States v. Alvarado-Martinez*, 556 F.3d 732, 735 (9th Cir. 2009). *See also United States v. Alvarado-Guizar*, 361 F.3d 597, 600 (9th Cir. 2004) ("We . . . review for abuse of discretion a district court's evaluation of the reliability of evidence used for sentencing purposes.").

Defendant argues that review should be de novo. Defendant asserts that the question at issue here concerns the application of law to facts, because "there was no dispute over the relevant facts (that the court records had been destroyed and the only information available was a [rap sheet])." **[Blue Br. 12]** This argument misidentifies "the relevant facts." Whether or not the parties agreed about the evidence that was or was not available, they most certainly did not agree about the central facts at issue in the sentencing: the date and length of Defendant's prior sentence. Defendant did not think the rap sheet was sufficiently reliable to prove these facts. The Government did. The question then concerns the reliability of the evidence relied upon by the district judge. "[A] district court's evaluation of the reliability of evidence used for sentencing purposes" is reviewed "for an abuse of discretion." *Id.*

## DISCUSSION

Defendant raises only one issue in this appeal: Is a fingerprint-matched rap sheet sufficiently reliable to establish the date of a prior conviction and the length of the resultant sentence for the purpose of assigning criminal history points under the Sentencing Guidelines? For the reasons explained below, we conclude that the rap sheet was sufficiently reliable in this case. The sentence imposed by the district court is therefore AFFIRMED.

**[1]** The Sentencing Guidelines provide that:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be

> given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy*.

U.S.S.G. § 6A1.3(a) (emphasis added). As is made clear in this section, while the sentencing judge is not limited by the Rules of Evidence, she can only consider information that "has sufficient indicia of reliability to support its probable accuracy."

**[2]** Defendant argues that his rap sheet was not sufficiently reliable to support adding two points under § 4A1.1(b) of the Sentencing Guidelines. That Section provides that a sentencing judge is to "[a]dd 2 [criminal history] points for each prior sentence of imprisonment of at least sixty days," taking care not to double count a sentence also considered under § 4A1.1(a). Defendant argues first that the rap sheet is insufficiently reliable to prove that the sentence was for "at least sixty days" as required by § 4A1.1(b). Second, he argues that it is similarly insufficient to prove that the prior conviction was recent enough to be relevant under the Guidelines. Under § 4A1.2(e)(2) and (3), a "prior sentence" for purposes of § 4A1.1(a) must have been "imposed within ten years of the defendant's commencement of the instant offense. . . . Any prior sentence not within the time periods specified above is not counted." According to Defendant, his rap sheet is not sufficiently reliable to prove that his conviction was "imposed within ten years" of the commencement of his federal offense.

**[3]** As recounted in the PSR, Defendant's rap sheet reflected the imposition of a 180-day prison sentence on August 28, 1997. Such a sentence is three times longer than § 4A1.1(a) requires. The PSR also reflects that Defendant's

federal crime "commenced" in October 2005, which is eight years after the August 1997 conviction listed on Defendant's rap sheet. For purposes of the ten-year limitation period of § 4A1.2, Defendant's prior conviction would have been stale only if it had been imposed earlier than October 1995. In other words, in order for the prior conviction to be "stale," the rap sheet must have been more than a few days off—it must have reflected a conviction taking place two years after that date on which it actually occurred.

**[4]** The parties devote much of their briefing to *Alvarado-Martinez*, 556 F.3d 732 (9th Cir. 2009). *Alvarado-Martinez* concerned, among other things, whether a fingerprint-matched rap sheet "was sufficiently reliable to be used in calculating [the defendant's] criminal-history score." 556 F.3d at 735. The panel concluded that it was sufficiently reliable, but limited its holding "to the circumstances presented here, namely the existence of a fingerprint-matched rap sheet and the absence of other evidence that would undermine the rap sheet's reliability." *Id.* at 735 n.2. The panel "express[ed] no opinion on the reliability of a rap sheet that is, for example, not compiled on the basis of fingerprint matching or is otherwise undermined by contradictory evidence." *Id.* The Government contends that this case controls here.

Defendant seeks to distinguish *Alvarado-Martinez* because in that case the sentencing judge also had access to docket sheets that listed the crimes in question. The question in that case was whether those crimes could be attributed to the defendant, and the district court relied on the fingerprint-identified rap sheet to connect the defendant to the docket sheet (the use of an alias resulted in the docket sheet not reflecting the defendant's name). In this case there is no underlying court record reflecting the nature of the sentences, because those records were all destroyed. According to Defendant, while a rap sheet may be sufficient to prove identity—to connect a defendant to a crime reflected in court

records—it is not sufficient on its own to prove the details of those convictions.

[5] This difference is immaterial. The *Alvarado-Martinez* court explained the question before it as "whether a district court abuses its discretion by concluding that a fingerprint-matched rap sheet, in the absence of contrary evidence, is sufficiently reliable for assigning criminal-history points." 556 F.3d at 734 n.1. It did not limit its holding to questions of identity or to cases where the rap sheet is corroborated by some other piece of evidence, but rather to cases where the rap sheet is fingerprint-verified and there is no contradictory evidence.

[6] Such a result is similarly if not more compelling in this case. First, the parties agree that more reliable evidence that could corroborate the rap sheet simply is not available. The relevant court records, including the docket sheet, have been destroyed. Had Defendant submitted some form of evidence to undermine the rap sheet—such as evidence that the conviction actually happened in 1995 or earlier, as opposed to 1997—the district judge would have been obligated to weigh the evidence, and might have concluded that the rap sheet was of little persuasive value. But Defendant did not do so. Second, unlike in *Alvarado-Martinez*, Defendant concedes the fact of conviction. This case therefore does not present the question of whether an uncorroborated, albeit fingerprint-verified, rap sheet is sufficiently reliable to prove the conviction itself. Given the fact that Defendant introduced no contradicting evidence, the fact that more reliable documentary evidence had previously been destroyed, and the fact that Defendant conceded the fact of conviction, we cannot conclude that the district judge abused her discretion in relying on the fingerprint-verified rap sheet.

Such an outcome is also broadly consistent with the rules adopted in other circuits, which have similarly condoned the use of rap sheets in certain circumstances. *See, e.g.*, *United*

*States v. Rodriguez-Arreola*, 313 F.3d 1064, 1068 (8th Cir. 2002) (relying in part on a defendant's rap sheet); *United States v. Shinault*, 147 F.3d 1266, 1278 (10th Cir. 1998) (same); *United States v. Ibanez*, 924 F.2d 427, 430 (2d Cir. 1991) (same). While none of these cases is precisely analogous to this one, these cases still reflect the fact that other courts find rap sheets sufficiently reliable to be considered in the sentencing process. No circuit has adopted the rule advocated by Defendant. As noted by the First Circuit, rather than impose per se prohibition on the use of imperfect evidence at sentencing, "the wiser course is to leave reliability decisions and credibility determinations to the informed discretion of the district court, while rigorously ensuring that defendants have a sufficient opportunity to impeach tenuous evidence in appropriate ways, such as through cross-examination or by the introduction of evidence of their own." *United States v. Shrader*, 56 F.3d 288, 295 (1st Cir. 1995).

## CONCLUSION

**[7]** For the reasons explained above, the sentence imposed by the district court is AFFIRMED. In a case such as this one, where the district judge is presented with no evidence to undermine the accuracy of the rap sheet, and the defendant has in fact conceded the existence of the conviction, the judge is entitled to rely on the rap sheet as evidence of the nature of a defendant's prior crimes.