**UNITED STATES of America, Plaintiff,**

v.

**Anthony PISARSKI and Sonny Moore, Defendants.**

**Case No. 14–cr–00278–RS–1**

United States District Court, N.D. California.

Signed August 8, 2017

Adam Wright, U.S. Attorney's Office, San Francisco, CA, for Plaintiff.

Ronald Neil Richards, Beverly Hills, CA, T. Louis Palazzo, Palazzo Law Firm, A Professional Law Corporation, Las Vegas, NV, for Defendants.

## ORDER GRANTING MOTION FOR TEMPORARY STAY

RICHARD SEEBORG, United States District Judge

## I. INTRODUCTION

Defendants Anthony Pisarski and Sonny Moore have pleaded guilty to, and await sentencing for, conspiracy to manufacture and possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. They move, however, to have the Department of Justice enjoined from expending any funds on their prosecution. The motion is made pursuant to Consolidated Appropriations Act, Pub. L. No. 115–31, § 537, 131 Stat. 135, 227 (2017) [hereinafter "§ 537"], which prohibits the Department of Justice from expending funds to prevent a state from implementing its medical marijuana laws. Under *United States v. McIntosh*, 833 F.3d 1163, 1172–73 (9th Cir. 2016), criminal defendants may seek to enjoin such expenditures in their particular cases. For the reasons that follow, defendants' motion is granted, and the case will be stayed in order to effectuate the Congressional prohibition on expenditures.

## II. BACKGROUND

On July 10, 2012, law enforcement agents executed a warrant to search a Humboldt County, California, property owned by defendants. Sonny Moore's mother Pamela, along with the two defendants, apparently resided at the property. The search uncovered 327 marijuana plants, a total of $416,125 in cash, and two loaded firearms. A subsequent search in January 2013 revealed another firearm, ammunition, and various gold bars, gold coins, and silver bars worth $28,515.33. A final search in October 2013 revealed $189,615 welded inside a trailer on the property.

The government charged defendants by information with one count of conspiracy to manufacture and possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. Defendants both waived indictment, and on July 22, 2014, entered into guilty plea agreements. In those agreements, defendants made certain factual admissions, including:

> Beginning at an unknown date and continuing to at least July 10, 2012, there was an agreement between me and another individual to manufacture and possess marijuana on property in Humboldt County. During this period, I knowingly grew and possessed marijuana on this property, and I did so with the intention to sell marijuana to others.

Pisarski Plea at 2; Moore Plea at 2. Defendants also admitted the cash, guns, ammunition, silver, and gold found on their Humboldt County property were "derived from proceeds obtained, directly or indirectly, as a result of the violation [pleaded to], and/or [were] used or intended to be used, in any manner or in part, to commit or to facilitate the commission of the violation." Pisarski Plea at 5; Moore Plea at 5.

■ In December 2014, Congress enacted a rider in an omnibus appropriations bill prohibiting the Department of Justice from expending funds to prevent a state from implementing its medical marijuana laws. The rider has been renewed many times since, and survives now as § 537, in essentially the same form as past iterations.[1] Since the rider was first enacted, a sentencing hearing for each defendant has been continued numerous times in anticipation of Ninth Circuit guidance as to the rider's effect. In August 2016, the Ninth Circuit decided *McIntosh*, permitting criminal defendants to seek injunctions on the basis of the rider. 833 F.3d at 1172–73. According to *McIntosh*, such defendants are entitled to an evidentiary hearing in order to demonstrate their strict compliance with state medical marijuana law; such a showing precludes the Department of Justice from expending any further funds in a case. *Id.* Pursuant to *McIntosh*, defendants sought to enjoin the government's expenditure of funds in this action, and an evidentiary hearing on the motion was held on Friday, July 28, 2017.

Prior to the hearing, the parties submitted various declarations and exhibits. In two declarations, Pisarski stated, among other things: that he had a physician's recommendation to grow 99 plants; that Pamela Moore had a physician's recommendation to grow 99 plants; that he was a member of, and had provided excess marijuana to, two collectives—"the Covelo Cut Off Collective" and an informal collective with Sakina Ramrattan; that when he had provided marijuana to the collectives in the past, he had been reimbursed for his costs; that it was unclear how many of the 327 plants found on his property in July 2012 would have been usable; and that it was unclear if the plants would have produced sufficient excess yield to distribute to the collectives. Pisarski included with his declarations: a copy of his 2012 physician's recommendation to grow up to 99 plants; a copy of Pamela Moore's 2011 physician's recommendation to use marijuana therapeutically; September 2011 agreements between Pisarski and Ramrattan, Joseph Augustine, and Laura Labelle for Pisarski to grow marijuana for an entity called "Green Remedies"; and Augustine's 2011 physician's recommendation to use medical marijuana.

Ramrattan also submitted a declaration, averring, among other things: that Pisarski had been cultivating marijuana for her since 2010; that she had a physician's recommendation to use marijuana for two years prior to October 2012; that she pooled her resources in a collective with other patients, including Laura Labelle

---

1. In its current form, § 537 reads: "None of the funds made available in this Act to the Department of Justice may be used, with respect to any of the States of Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, or with respect to the District of Columbia, Guam, or Puerto Rico, to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana."

and Joseph Augustine; that they authorized Pisarski to cultivate marijuana for them in July 2012; that he was growing 300 plants for them "as well as other patients" in their group, Ramrattan Decl. ¶ 15; that Pisarski would deliver marijuana to them twice a year and be reimbursed for his costs; and that the marijuana would only be distributed to "our patients who specially retained Mr. Pisarski to grow medical cannabis," *id.* ¶ 27. Jeffrey Apodaca, apparently the "organizer and operator" of the Covelo Cut Off Collective, Apodaca ¶ 4, submitted a similar declaration. He claimed, among other things: that Pisarski had been cultivating marijuana for the collective since 2010, and would deliver it two or three times a year; that the collective would reimburse Pisarski for his costs; that the collective had over 100 patients; and that in July 2012 the collective authorized Pisarski to cultivate additional marijuana for its account.

Moore submitted his own declaration, stating, among other things: that he had a 2011 physician's recommendation to possess up to 99 marijuana, valid in October 2012; that he was a caregiver for his mother Pamela, who had a physician's recommendation to possess up to 99 marijuana plants; and that he had not profited and did not expect to profit from the plants found on his property in October 2012. He also submitted a 2017 physician's recommendation to use medical marijuana, and records from a 2011 medical appointment.

The government, meanwhile, submitted declarations from Jon Rasmussen, a Drug Enforcement Administration ("DEA") agent, and Chance Landreneaux, a former DEA agent. Rasmussen and Landreneaux participated in the search of defendants' Humboldt County property, and spoke in their declarations of the marijuana, guns, ammunition, cash, silver, and gold those searches had uncovered. The government also submitted as exhibits photographs from those searches. At the hearing, the government called as a witness Jason Tindell, a business taxes specialist from the California Department of Tax and Fee Administration. Tindell testified to defendants' compliance—or lack thereof—with California tax law.

## III. LEGAL STANDARD

■ In order to prevail on their motion, defendants bear the burden of proving, by a preponderance of the evidence, that "their conduct was completely authorized by California law," meaning that "they strictly complied with all relevant conditions imposed by [California] law on the use, distribution, possession, and cultivation of medical marijuana." Order Determining Burden of Proof at 2, 4 (quoting *United States v. McIntosh*, 833 F.3d 1163, 1179 (9th Cir. 2016)) (internal quotation marks omitted).

## IV. DISCUSSION

### A. Relevant State Law

■ Before defendants' strict compliance with all relevant conditions imposed by [California] law on the use, distribution, possession, and cultivation of medical marijuana can be determined, the relevant conditions must be established. Because the compliance requirement imposed in *McIntosh* is presented in the past tense, *see* 833 F.3d at 1179, the relevant conditions will be only those relevant conditions that applied at the time of defendants' charged conduct in July 2012. The fundamental legal framework governing medical marijuana in California, however, appears to be the same now as it was in July 2012.[2]

---

**2.** Contemporary California law pertaining to *non*-medical marijuana cultivation, possession, distribution, and use is not relevant here, both because it was not in place in July 2012, and because § 537 explicitly extends only to "medical marijuana."

The possession, cultivation, possession for sale, and sale of marijuana are generally unlawful under California law. *See* Cal. Health & Safety Code §§ 11357, 11358, 11359, 11360. Nonetheless, California's Compassionate Use Act ("CUA"), passed as Proposition 215 in 1996, provides immunity from prosecution for marijuana possession and cultivation to a "patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." *Id.* § 11362.5(b)(1)(C). " '[P]rimary caregiver' means the individual designated by the person exempted … who has consistently assumed responsibility for the housing, health, or safety of that person." *Id.* § 11362.5(e). Expanding upon the CUA, California's Medical Marijuana Program Act ("MMPA") provides immunity from criminal sanction for, among other things, the possession, cultivation, possession for sale, and sale of marijuana to "qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate cannabis for medicinal purposes." *Id.* § 11362.775(a).[3] " 'Qualified patient' means a person who is entitled to the protections of [the CUA], but who does not have an identification card issued pursuant to [the MMPA]." *Id.* § 11362.7(f). Nothing in the MPAA authorizes "any individual or group to cultivate or distribute cannabis for profit." *Id.* § 11362.765(a).

"Although section 11362.775 clearly provides for collective cultivation, it does not specify what [is] meant by an association of persons who engage in collective or cooperative cultivation for medical pur-

poses. For example, there is no mention of formality requirements, permissible numbers of persons, acceptable financial arrangements, or distribution limitations." *People v. Orlosky*, 233 Cal.App.4th 257, 267–68, 182 Cal.Rptr.3d 561 (2015). Nevertheless "courts have concluded the provision properly encompasses relatively large scale enterprises that distribute marijuana to qualified patients, so long as the enterprise operates on a nonprofit basis and in a manner consistent with distribution for medical purposes," and have concluded "the collective cultivation provision does not require that all members actively participate in the cultivation process but allows for members to support the cooperative endeavor through, for example, financial contributions to pay for the cost of the cultivation." *Id.* at 268, 182 Cal.Rptr.3d 561 (citation omitted). This is true even of "collective endeavors involving the *distribution* of marijuana to large numbers of persons who are not involved in the cultivation activity." *Id.* (emphasis in original). At the same time, the size and business formality of a collective may be relevant in assessing its legality under the MPPA. *See id.* at 268–69, 182 Cal. Rptr.3d 561 (citations omitted).

Because Pisarski and Moore have pleaded guilty to conspiracy to manufacture and possess with intent to distribute marijuana, and have specifically admitted to possession with intent to distribute, they cannot show their strict compliance with California law by invoking the CUA; the CUA does not offer immunity from criminal sanction for possession for sale. *See id.* § 11362.5. To show their strict compliance with California law, defendants must demonstrate their entitlement to immunity under the MPAA, which protects against

---

**3.** The MMPA extends the same immunity to other classes of defendants, but it does not appear Pisarski and Moore can prove by a preponderance of the evidence their inclusion in any such class. *See id.* § 11362.765(a).

criminal sanction for a wider range of conduct, including possession for sale. *Id.* § 11362.775(a). Specifically, defendants must show their conduct was authorized according to the collective cultivation defense provided in section 11362.775(a).

## B. Defendant's Strict Compliance with California Medical Marijuana Law

■ Pisarski and Moore's case presents something of a temporal conundrum. They have admitted and pleaded guilty to possession, cultivation, and possession for sale. They have not been charged with or admitted to any sales, and the government has not offered any evidence of sales. The government has also failed to offer any evidence of an impending sale as of July 2012, and the defendants have only offered limited evidence of such—evidence that Pisarski may have, sometime after July 2012, provided marijuana to the Covello Cut Off and/or Ramrattan collectives, should the 327 plants on the Humboldt County property have yielded sufficient marijuana to distribute. The parties thus agree defendants' strict compliance with California law can only be assessed as of the date of the charged conduct—July 10, 2012. It is not apparent, however, that the MPAA would have required on that date defendants show that any potential future sale would be fully compliant with its requirements.

Although the MPAA offers immunity from prosecution for possession for sale, its relevant provision does not speak to the issue of prospective compliance, but rather seems concerned with contemporaneous conditions. California case law does not offer much further guidance with respect to how compliance can be assessed prospectively in such circumstances, except establishing that the collective cultivation defense embodied in section 11362.775(a) may not be invoked when the proffered members of an alleged collective are conclusively *not* qualified patients, persons with valid identification cards, or primary caregivers. *See People v. Frazier*, 128 Cal. App.4th 807, 825–27, 27 Cal.Rptr.3d 336 (2005) (defendant not entitled to jury instruction on § 11362.775(a) collective cultivation defense to charges including cultivation and possession for sale of marijuana because the jury had elsewhere concluded the proffered patients in an alleged collective were not qualified patients under the CUA). In the face of, but consistent with, such minimal guidance, it would seem the best approach to determining the applicability of the collective cultivation defense in the case of a defendant charged with possession for sale would be to require of the defendant a showing proportional to the imminence and definiteness of the alleged sale. That is to say, where a sale is imminent and the features of the sale definite, the defendant must show every aspect of that sale was compliant with the terms of MPAA; where, however, any future sale is purely speculative, the defendant must show only that, by the time of such sale, he could ensure compliance.

This case falls between these two extremes, but toward the latter end of that spectrum; defendants may, at some date after July 10, 2012, have distributed marijuana to the Covello Cut Off and/or Ramrattan collectives. Neither party has brought forth any evidence with respect to when or under what conditions such sales would have occurred, how much marijuana would have been sold, or what it would have been sold for.

Defendants have not made an exhaustive or optimal evidentiary showing, but have sufficiently indicated that, to the extent any of the yield of their 327 marijuana plants would have been sold, it would have been sold to a collective on a not-for-profit basis. Their evidence indicates that, had any sale occurred, it would have been to the Covello Cut Off and/or Ramrattan col-

lectives for reimbursement only. Importantly, defendants' evidence indicates any potential sale was sufficiently far into the future that, by the time of such sale, they would have had ample time to ensure every aspect of it complied with the MPAA.[4]

The government has not offered any evidence to the contrary. It argues defendants fail to establish any sale would have been not-for-profit, but defendants have proffered, through declarations, that any sales to the Covello Cut Off and/or Ramrattan collectives would have been for reimbursement of costs. The government likewise argues the cash, silver, and gold recovered from defendants' property—along with defendants' admissions those assets were "derived from proceeds obtained, directly or indirectly, as a result of the violation [pleaded to], and/or [were] used or intended to be used, in any manner or in part, to commit or to facilitate the commission of the violation," Pisarski Plea at 5; Moore Plea at 5—are evidence a future sale would have been for profit. Yet it is unclear how defendants could have obtained profit from an unconsummated *future* sale, and unclear why the use of such monetary assets to *facilitate* a sale indicate the sale would have been for profit. Moreover, the presence of those assets is wholly consistent with Pisarski and Moore having been reimbursed for past sales, especially given that marijuana transactions—even those legal under state law—are often made in cash because banks are unwilling to help facilitate the business. The government similarly argues Pisarski and Moore have offered no evidence they or the two collectives paid state-mandated sales tax on any marijuana

transaction. Yet, again, it is not apparent how defendants could have paid sales tax on an intended future sale, and the government has advanced no authority suggesting such tax would have to be paid any time before such a sale was completed. The government also suggests the cash, silver, gold, guns, and ammunition found on defendants' property are indicia of noncompliance with state law. Although nonbinding California Attorney General guidelines promulgated pursuant to the MMPA opine that weapons and excessive amounts of cash are indicia of an unlawful marijuana operation, *see* California Attorney General, "Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use" at 11 (August 2008), the presence of cash, precious metals, and weapons is equally consistent with the operation of a rural, cash-intensive enterprise.

The government's best argument is that Pisarski and Moore have not shown all members of the Covello Cut Off and Ramrattan collectives were qualified patients or primary caregivers. Yet the government fails to identify any authority requiring defendants' to establish the status of all collective members well before any sale, and it is not apparent that, in July 2012, defendants knew who the members of each collective would be at the time of any future sale such that their qualified patient or caregiver status could be established. Relatedly, the government has not identified a single member of either collective who was *not* a qualified patient or caregiver.

In this context—where defendants are charged with intent to sell marijuana, but

---

4. Defendants' evidence contemplates only Pisarski distributing marijuana to the Covello Cut Off and/or Ramrattan collectives, and neither party has offered any evidence as to Moore's potential sales activities. Yet because Pisarski and Moore operated on the same property and both pleaded guilty to conspira-

cy to manufacture and possess with intent to distribute marijuana, the only inference the record supports is that Moore's plea and admissions contemplate sales, with Pisarski, to the Covello Cut Off and/or Ramrattan collectives. Thus, his ability to invoke the collective cultivation defense is evaluated on this basis.

the details of such a prospective sale are thin at best; where defendants have shown to a degree proportionate with the indeterminate nature of such sale that it would have been in compliance with state law; and where the government has offered no direct evidence that such sale would have been plainly *noncompliant* with state law—defendants' suboptimal evidentiary showing is nonetheless sufficient to demonstrate, by a preponderance of the evidence, that their conduct strictly complied with all relevant conditions imposed by California law on the use, distribution, possession, and cultivation of medical marijuana. Even a slight alteration of the factual record here might call for another conclusion. That said, defendants have satisfied their burden and their motion will be granted.

### V.   CONCLUSION

Defendants Pisarski and Moore have proven, by a preponderance of the evidence, their strict compliance "with all relevant conditions imposed by [California] law on the use, distribution, possession, and cultivation of medical marijuana." *McIntosh*, 833 F.3d at 1179. Accordingly, their motion to have this prosecution enjoined is granted. To effectuate the injunction, the matter will be stayed until and unless a future appropriations bill permits the government to proceed. If such a bill is enacted, the government may notify the Court and move for the stay to be lifted.

**IT IS SO ORDERED.**